**I IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

CHRISTOPHER COBB,

      Petitioner,

      v.

WARDEN, USP ATLANTA,

      Respondent.

CIVIL ACTION NO.: 2:23-cv-8

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Christopher Cobb ("Cobb") was incarcerated at the Federal Correctional Institution in Jesup, Georgia, at the time he filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. I issued a Report and Recommendation that the Court grant Respondent's Motion to Dismiss, and the Court adopted this Recommendation as the opinion of the Court, over Cobb's objections. Docs. 16, 17, 18. Cobb's Petition is back before this Court after the Eleventh Circuit Court of Appeals vacated this Court's judgment and remanded for further consideration. Docs. 34, 37, 38. Cobb filed a Motion to Supplement; Respondent filed a Response. Docs. 40, 42. Thus, I consider anew Cobb's Petition and Respondent's Motion to Dismiss and all associated filings. Docs. 1, 7, 9, 11, 13, 15.

For the following reasons, I **RECOMMEND** that the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Cobb's Petition, and **DENY as moot** Cobb's Motion for Injunctive Relief. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Cobb *in forma*

*pauperis* status on appeal.  I **GRANT** Cobb's Motion to Supplement and have considered the additional authority that Cobb provided.  Doc. 40.

## BACKGROUND

Cobb was convicted in the Northern District of Alabama of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B).  He was sentenced to 210 months' imprisonment, comprised of a 210-month sentence for the receipt conviction and a 120-month sentence on the possession conviction, to be served concurrently.  Doc. 7-2 at 2–3.  Cobb has a projected release date of December 25, 2025, via good conduct release.  Doc. 7-1 at 2; Doc. 7 at 2.

In his Petition, Cobb asked this Court to declare the First Step Act's ("FSA") exclusion of certain offenses, including the offenses for which he was convicted, unconstitutional.  Doc. 1 at 1 (citing 18 U.S.C. § 3632(d)(4)(D)).  Respondent countered that Cobb lacks standing to bring his Petition, failed to exhaust his administrative remedies, and has no protected liberty interest in FSA earned time credits.  Doc. 7.  I determined that Cobb had failed to exhaust his administrative remedies and recommended the Court dismiss on this basis.  Doc. 16.  The Honorable Lisa Godbey Wood adopted this recommendation and entered judgment closing this case.  Docs. 18, 19.  Cobb filed a notice of appeal, contending this Court erred by determining the exhaustion requirement applied to his Petition.  Doc. 20.

On appeal, the Eleventh Circuit determined this Court erred in failing to determine whether Cobb had standing to bring his Petition before ruling on the issue of exhaustion.  Doc. 34; see also Cobb v. Warden, No. 23-12416, 2025 WL 340004, at *2 (11th Cir. Jan. 30, 2025).  The Court explained that standing is a jurisdictional requirement, which cannot be waived or forfeited.  Because this Court did not rule on the standing issue, the Eleventh Circuit

2

vacated this Court's judgment and remanded this case to allow this Court to rule on the standing issue "in the first instance." Doc. 34 at 5-7. Judge Wood made the Eleventh Circuit's mandate the order of this Court. Docs. 37, 38. Therefore, the case is before the Court on remand.

After the case was remanded, Cobb filed his Motion to Supplement, asking the Court to consider additional authority related to standing. Specifically, Cobb cites Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656 (1993). See Doc. 40 at 2. Cobb contends that a writ should be issued based on 28 U.S.C. § 2241, "declaring that the First Step Act's List of Excluded Offenses is unconstitutional, both on its face and as applied to Cobb as said list violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, under the 'irrebuttable presumption' doctrine." Doc. 1 at 1. In his supplemental brief, Cobb claims he is also injured by the "barrier" to release in 18 U.S.C. § 3632(d)(4)(D)(xlii) because it renders him unable to compete for the FSA's time credits on equal footing with other prisoners. Consequently, Cobb argues that, under Northeastern, he has a second injury of "unequal treatment" in violation of equal protection.[1]

Respondent filed a Response to Cobb's Motion to Supplement. Respondent does not address Cobb's request to supplement but reasserts the argument that Cobb lacks standing and addresses the substantive arguments contained in Cobb's supplement. Doc. 42.

---

[1] The Court construes Cobb's request as seeking release from prison. Therefore, § 2241 is, without question, the proper jurisdictional avenue to challenge the "fact or duration" of confinement, Preiser v. Rodriguez, 411 U.S. 475, 498 (1973), or the execution of the sentence itself, Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008); see also Cortes-Morales v. Hastings, 827 F.3d 1009, 1014 (11th Cir. 2016) (citing Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 n.1 (11th Cir. 2008)). To the extent Cobb seeks prerelease custody under the FSA, § 2241 is likely the appropriate jurisdictional vehicle for challenging denials of placement in pre-release custody under the FSA. See Woolsey v. Washington, Case No. 2:25-CV-137, 2025 WL 2598794, at *11 (M.D. Ala. Sept. 8, 2025) (collecting cases and discussing Circuit split on jurisdictional question but finding Eleventh Circuit precedent strongly indicates that jurisdiction lies in such cases).

Given the lack of opposition, I **GRANT** Cobb's Motion to Supplement.  Doc. 40.  I have considered the arguments regarding Cobb's standing made in all relevant filings, as well as all authority the parties cite.  See Docs. 1, 7, 9, 40, 42, 43.  All issues are fully briefed and ripe for review.

## DISCUSSION

The FSA allows eligible inmates who successfully complete "evidence-based recidivism reduction programs" ("EBRRs") or productive activities ("PAs") to receive earned time credits ("FTCs") to be applied toward time in pre-release custody or supervised release.  18 U.S.C. § 3632(d)(4)(A).  An inmate may earn 10 days of credit for every 30 days of successful participation.  Id.  Inmates who have been assigned at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional 5 days of credit for every 30 days of successful participation.  Id.

Under § 3632(d)(4)(D), certain prisoners are ineligible to receive time credits.  Cobb, who was convicted under § 2252A (i.e., certain activities relating to material constituting or containing child pornography), and § 2252(a)(5)(B) (i.e., certain activities relating to material involving the sexual exploitation of minors), is deemed ineligible to receive time credits by § 3632(d)(4)(D)(xli) and (xlii).

Cobb argues in his Petition that the "facial unconstitutionality of 18 [U.S.C.] § 3632(d)(4)(D)'s command to exclude prisoners by category from the liberty interest granted by Congress'[s] mandate in § 3632(d)(4) is the direct cause of his injury, not merely the inclusion of his charge on the list."  Doc. 1 at 2.  Cobb claims he is harmed by the statute—whether it be by its disparate application to him versus others or by its general mandate.  See Doc. 40 at 2 (arguing that Cobb "has an injury of unequal treatment since the 'government erects a barrier

4

that makes it more difficult' for him to 'obtain a benefit than it is for members of another group.'"); see also Doc. 1 at 2 ("[T]he facial unconstitutionality of 18 [U.S.C.] § 3632(d)(4)(D)'s command to exclude prisoners by category from the liberty interest granted by Congress'[s] mandate in §3632(d)(4) is the direct cause of his injury, not merely the inclusion of his charge on the list.").

Regarding standing, Cobb argues that "declaring the command to exclude unconstitutional would allow for his 'eligibility' for the Time Credits—which is the protected 'liberty interest' at issue here." Id. Respondent disagrees, contending that Cobb has not alleged an injury in fact. Doc. 7 at 4–5. Given the Eleventh Circuit's mandate, this Court must assess Respondent's standing argument before it reaches the exhaustion argument or considers the merits of his claim.

**I.      Cobb Did Not Have Standing to Bring His Petition at the Time of Filing**

"Article III of the United States Constitution restricts the power of federal courts to adjudicating actual 'cases' and 'controversies.'" Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1273 (11th Cir. 2001) (citing U.S. Const. art. III, § 2, cl. 1); see also John Roe, Inc. v. United States, 142 F.3d 1416, 1420–21 (11th Cir. 1998) (stating it is well settled that the exercise of federal subject matter jurisdiction depends on the existence of a "case or controversy," and the federal courts have no authority to give opinions on moot questions or abstract propositions) (citing Church of Scientology v. United States, 506 U.S. 9, 12 (1992); and then citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." Wooden, 247 F.3d at 1273 (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). "[E]very court has an independent duty to review standing as a basis for jurisdiction at any time, for every case

5

it adjudicates." Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

Standing under Article III contains three elements: (i) "injury in fact that is concrete, particularized, and actual or imminent; (ii) injury that was likely caused by the defendant[,]" or "traceability"; and (iii) "injury which can be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). The plaintiff must present "specific, concrete facts" showing that the challenged conduct will result in a "demonstrable, particularized injury" to the plaintiff so that the plaintiff personally will benefit in a "tangible way" from court action. Warth v. Seldin, 422 U.S. 490, 508 (1975); Thompson Bldg. Wrecking Co., Inc. v. Augusta, CV 109-115, 2010 WL 11613685, at *2–3 (S.D. Ga. July 26, 2010); HM Fla.-ORL, LLC v. Governor of Fla., 137 F.4th 1207 (11th Cir. 2025). A plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter." Carney v. Adams, 592 U.S. 53, 57 (2020). "Put very broadly, for purposes of a standing analysis, a court will generally accept the allegations that a defendant's actions were wrong and then ask whether a particular plaintiff's rights were violated by them." MacPhee v. MiMedx Grp., Inc., 73 F.4th 1220, 1240 (11th Cir. 2023).

Cobb argues that he has standing for two reasons. First, he contends that he has standing to assert his claims because he has been exposed to additional prison time based on § 3632(d)(4)'s exclusion of certain inmates from the ability to earn FSA credits. Second, Cobb contends that § 3632(d)(4)(D) violates his equal protection rights, and that unequal treatment— regardless of the effect on Cobb—provides a basis for standing. Respondent contends that Cobb lacks standing under either theory. I now address each of Cobb's purported bases for standing.

### A.     Additional Prison Time

#### 1.     *Injury in fact.*

Respondent challenges Cobb's standing based on the additional prison time theory by arguing that Cobb is challenging the entire list of excluded offenses in § 3632(d)(4)(D), but he is not serving a sentence for a conviction for many of the other offenses in that statute.  In other words, Cobb cannot show injury in fact as to his alleged "additional prison time injury" because his challenge broadly attacks inapplicable parts of the statute.  See Doc. 7 at 4–5 (citing Doc. 1 at 2).  Respondent argues that Cobb "has no personal stake in a declaration that it is unconstitutional to prohibit prisoners convicted of any of these other offenses from receiving FTCs."  Id. at 5.

Respondent's argument is unconvincing.  The argument is based on a strict construction of Cobb's filings, despite the fact that Cobb is pro se.  In his briefing, Cobb sometimes refers to the specific subcategory that applies to him, and other times refers to the entire list of offenses in § 3632(d)(4)(D).  Even so, it is clear that Cobb does not intend to seek relief related to the other subsections that do not apply to him.  Instead, Cobb asks the Court to conclude that the barrier to earlier release mandated in § 3632(d)(4)(D) is unconstitutional as applied to him—a person covered by a subcategory of that statute—because it has allegedly resulted in unfair application of the FSA.  Cobb states that "§ 3632(d)(4)(D)'s command to exclude prisoners by category from the liberty interest granted by Congress' mandate in § 3632(d)(4) is the direct cause of his injury."  Thus, with the benefit of liberal construction, Cobb only seeks to challenge only those portions of § 3632(d)(4)(D) that make him ineligible for FSA credits.[2]  As a result, I reject

---

[2]     Respondent makes a similar and related argument concerning causation.  Respondent states that Cobb "has not established . . .  causation with respect to the broader class of offenses listed in § 3632(d)(4)(D) other than his offense of conviction."  Doc. 7 at 5–23.  In other words, Respondent argues that Cobb cannot show that his injuries were caused by Respondent's actions related to the

Respondent's argument Cobb fails to allege an injury in fact merely because Cobb, at times, points to other, unrelated portions of § 3632(d)(4)(D).

### 2.    Redressability.

Respondent also argues Cobb lacks standing because judicial relief would not redress the injury claims. Doc. 7 at 5. Specifically, Respondent argues that even if the Court concluded that the specific parts of § 3632(d)(4) that apply to Cobb are unconstitutional, Cobb still would not be entitled to any FSA relief. That is because Cobb has not satisfied the requirements for earning FTCs or applying FTCs to his sentence. Respondent contends that Cobb's own allegations and the documents Cobb submitted with his Petition demonstrate this fact. Stated differently, Respondent contends that even if the barrier of § 3632(d)(4)(D)(xlii) were removed, Cobb would still not be entitled to any relief. As result, Cobb has not shown that judicial relief would redress his purported injury.

I agree that Cobb has not shown that he has suffered an injury that can be redressed by judicial relief. The record demonstrates that Cobb had not participated in the programs that would qualify him for FSA relief and was not likely to complete them at the time he filed his Petition. Therefore, even if the Court accepted Cobb's challenge to § 3632(d)(4)(D), he still would not be entitled to FSA relief.

In assessing redressability, a court must ask whether a decision in a movant's favor would "significant[ly] increase . . . the likelihood" that he "would obtain relief that directly

---

portions of § 3632 that do not apply to Cobb. This argument fails for the same reasons the injury-in-fact argument fails. Cobb was probably insufficiently clear about his challenge because of his pro se status. But it is apparent from the filings that Cobb's challenge focuses on those portions of § 3632 that preclude him from FSA credits.

redresses the injury" that he claims to have suffered.  Harrell v. Fla. Bar, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010) (citation omitted).

To earn FTCs, eligible prisoners must "successfully complete evidence-based recidivism reduction [(EBRR)] programming or productive activities [(PAs)]."  See Doc. 7 at 6 (citing 18 U.S.C. § 3632(d)(4)(A)), and quoting 28 C.F.R. §§ 523.40(b), 523.41(c)(1)).  Also "'[s]uccessful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment and has complied with the requirements of each particular EBRR Program or PA."  Id. (quoting 28 C.F.R. § 523.41(c)(2)).  In other words, prisoners earn FTCs for those EBRR programs or PAs that align with their need areas.  See 28 C.F.R. § 523.41(c)(2).

Along with his Petition, Cobb filed an Individualized Needs Plan-Program Review report ("Program Review report") that shows Cobb had needs in the cognitions and substance abuse areas.[3]  See Doc. 1-1 at 3.  The Program Review report states a goal for the next program review was for him to enroll or be placed on the waiting list for "Basic Cognitive Skills" and a long-term goal was for him to complete the residential or non-residential drug treatment program by December 2023.  Id.  According to the Program Review report, when Cobb filed his Petition, he had "not completed any educational programs during the current review period," and the report states that Cobb had "no interest" in the drug abuse program.  Id.

The Program Review report proves Cobb had not participated in the programs that would qualify him for FSA relief, even if § 3632(d)(4)(D)(xli) and (xlii) did not exclude him.  At the

---

[3]     Exhibits attached to a petition are considered part of the petition and may be considered.
See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

time of filing his Petition, Cobb was not entitled to any relief under the FSA because he had not participated in assigned EBRRs. The record shows that Cobb simply did not participate in the programs required for FTCs and, therefore, even if Cobb had alleged an injury in fact related to § 3632(d)(4)(D)'s exclusions, his injury was not redressable by judicial relief at the time he filed his Petition.[4]

Cobb makes various arguments to try to show standing, but none of those arguments withstand scrutiny. Cobb argues that his "UNICOR employment and his 'college correspondence'" suggest he would have earned FTCs. Doc. 9 at 1; see also Doc. 40 at 3. But, as Respondent points out, "not all employment and educational activities are eligible for FTCs."

---

[4] Respondent's argument focuses solely on the redressability requirement for standing. However, I note that Respondent likely could have made the same argument under the injury-in-fact heading. Cobb had not suffered an injury in fact at the time of filing his Petition because he did not suffer an injury that was "concrete" or "actual." Ramirez, 594 U.S. at 423. At most, Cobb alleged that if the barriers erected in § 3632(d)(4)(D) were removed, then, someday, perhaps, he would be entitled to FTCs, which then could, possibly, be applied to his sentence (assuming he did not lose the credits for other reasons). Such an injury is neither "concrete" nor "actual."

Of course, for the injury-in-fact requirement, a petitioner "does not have to await the consummation of threatened injury to obtain preventive relief." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979) (quoting Ry. Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)). A petitioner may still have standing if he is facing an "imminent injury," meaning one that is likely to occur immediately. But Cobb does not allege an imminent injury, either. There is no indication in his Petition, or anywhere else in the record, that Cobb would be entitled to FTCs immediately after filing his Petition, but for the exclusions in § 3632(d)(4)(D).

Respondent's argument could also be characterized as a ripeness challenge. Because Cobb had not completed the recommended EBRR programs or PAs, he was not entitled to any relief under the FSA when he filed his Petition, and his claim was not ripe. Applying the ripeness doctrine here would make good sense because Cobb has not offered any credible assurance that he will complete the EBRR programs or PAs in a way that would ensure that he receives relief under the FSA. See Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) ("The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.").

To be sure, Respondent has only raised this challenge as a redressability challenge and, therefore, I have only analyzed the argument under that rubric. I merely note that Cobb may lack standing for other reasons and his claim was likely not ripe at the time he filed it.

Doc. 7 at 8–9.  Rather, an eligible inmate must participate in EBRR programs or PAs that BOP

has recommended based on the inmate's individualized risk and needs assessment.  Although

Cobb points to activities that might provide a basis for FTCs for some inmates generally, there is

no indication that Cobb participated in the EBRR programs or PAs that the BOP recommended

he complete.  Indeed, there is no indication that the UNICOR and college correspondence meet

the BOP's recommendations for Cobb's individualized risk and needs assessment.  Thus, Cobb

has not shown that he satisfied the requirements for earning FTCs.

Cobb also points to FTCs obtained after he filed his Petition.  Doc. 43 at 3.  However,

any credits Cobb may have earned after he filed his Petition are irrelevant.  A plaintiff must

establish he had standing "at the time he filed his complaint."  See Carney v. Adams, 592 U.S.

53, 59 (2020) (noting that a plaintiff "bears the burden of establishing standing as of the time he

brought this lawsuit and maintaining it thereafter"); Schultz v. Alabama, 42 F.4th 1298, 1319

(11th Cir. 2022); Cook v. Bennett, 792 F.3d 1294, 1298 (11th Cir. 2015) ("Standing is

determined at the time the plaintiff files its complaint.").  Thus, the Court need not consider any

FTCs Cobb earned after he filed his Petition.

Respondent also argues that even if Petitioner were eligible to earn and would have

*earned* FTCs, he has not shown or alleged that he would be eligible to *apply* those FTCs to his

sentence.  Doc. 7 at 9.  A prisoner is eligible to apply earned FTCs toward pre-release custody or

early transfer to supervised release if and when the prisoner has earned time credits in an amount

that is equal to the remainder of the prisoner's imposed term of imprisonment.  18 U.S.C.

§ 3624(g)(1)(A).  At the time he filed his Petition, Cobb's release date was nearly 2 years and 11

months away.  See Doc. 1 (filed on January 10, 2023); Doc. 7-1 at 2 (explaining Cobb's

projected release date was December 25, 2025).  But in his Petition, Cobb contends that he

11

earned between one and two years of credits.  Doc. 1 at 5.  Because Cobb's own allegations suggest that he was not eligible to have credits applied to his sentence at the time he filed his Petition, his injury is not redressable.  See, e.g., Holland v. Gabby, No. 5:25CV9, 2025 WL 1287749, at *2 (N.D. Fla. Apr. 9, 2025), report and recommendation adopted, No. 5:25-CV-9, 2025 WL 1285822 (N.D. Fla. May 1, 2025) ("[A]lthough Holland is eligible to *earn* credits, her credits become eligible to be *applied* only when she has earned credits "in an amount that is equal to the remainder of [her] imposed term of imprisonment.")

Cobb makes other arguments to avoid the impact of his failure to complete the basic requirements for FTCs, but these arguments all fail.  Docs. 13 at 2–3, 43.  For example, Cobb contends that 28 C.F.R. § 523.42(b) does not state that an inmate must complete EBRR programs or PAs that the BOP recommends.  Doc. 43.  But § 523.42(b) is not an operative provision here.  Section 523.42(b) merely establishes certain dates related to earning FTCs.  Section 523.41(a) is the operative provision in that it defines "successful participation" for the purposes of FTCs.

Cobb also argues that the applicable regulation—§ 523.41—conflicts with the FSA itself because it adds a requirement that the inmate participate in EBRR programs and PAs that the BOP has recommended the inmate complete.  Id.  Cobb contends that if the Court ignores the requirement in § 523.41, then he has earned FTCs and, consequently, has suffered a redressable injury.  Cobb relies on Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), for support.  Doc. 43 at 2.  Cobb insists that § 523.41 is no longer controlling because Loper Bright requires courts to "use the statute, not regulation in [their] interpretation of statutory authority."  Id.  But Cobb does not assert any challenge to § 523.41 or any other regulation in his Petition; Cobb only asserts a constitutional challenge to § 3632(d)(4)(D).  See Doc. 9 at 1 ("Cobb did not present any

challenge to 28 CFR § 523.40 and 523.41 in his initial Petition . . . .").  Therefore, the Court

cannot assess validity of the requirements in § 523.41.[5]

Ultimately, Cobb has not shown that he has suffered an injury in fact related to additional

prison time, for which judicial relief would redress the injury.

### B.        Equal Protection

Cobb advances a second theory for standing.  Cobb asserts that he was injured by the

"erection of a barrier to earlier release that renders him unable to compete for the FSA's time

credits on equal footing with other prisoners," who, presumably § 3632(d)(4)(D)(xlii) limits.

Doc. 40 at 2.  Cobb contends he suffered a second injury in fact in the form of "unequal

treatment."  Id.  Cobb argues that under the standard articulated in Ne. Fla. Chapter of

Associated Gen. Contractors of Am. v. City of Jacksonville (Northeast Florida), 508 U.S. 656

(1993), he was injured when the "'government erect[ed] a barrier that ma[de] it more difficult for

him to 'obtain a benefit than it is for members of another group."  Id.

---

[5]         Even if Cobb had asserted a challenge to § 523.41—and Cobb clearly has not—I would still recommend dismissal of Cobb's Petition.  First, Cobb acknowledges that he would have to exhaust administrative remedies for such a claim.  See Doc. 9 at 1 (Cobb explaining that he intentionally did not assert a challenge to the regulations "because that would generally require administrative remedy exhaustion . . . .").  I already determined that Cobb did not exhaust administrative remedies before filing suit.  Cobb has never asserted that he did exhaust administrative remedies; rather, Cobb argues that the administrative remedies requirement does not apply to constitutional challenge.  Even accepting Cobb's position on the constitutional challenge, he would still need to exhaust administrative remedies for a challenge to the regulations, which he has not done.

Furthermore, Cobb's challenge to the Regulation lacks merit.  Section 3632(a) delegates to the Attorney General (and, thus, the BOP) the responsibility for implementing a system that ties EBRR programs and PAs to a prisoner's specific criminogenic needs.  Therefore, the BOP is given some discretion to determine what "successful participation" means.  And courts in the Eleventh Circuit have found that the term "successful participation" in § 3632(d)(4) is ambiguous and the BOP's interpretations of that term in 28 C.F.R. § 523.41(c)(2) and (4) are facially valid.  See, e.g., Sharma v. Peters, 756 F. Supp. 3d 1271, 1283 (M.D. Ala. 2024) (finding the statutory language "successful participation" is ambiguous and the BOP regulations facially valid even after Loper Bright but rejecting the BOP's application of the regulations to the petitioner in that case for other reasons).

Respondent argues that, even if the rationale in Northeast Florida provided standing on his "unequal treatment" claim of injury, Cobb would still lack standing as to his due process claim because it is not redressable.  Doc. 42 at 10–12.  Respondent argues that Northeast Florida is distinguishable and that the case does not apply to a prisoner challenging his eligibility for FTCs.  Id. at 12.

In Northeast Florida, the Court determined that the injury in fact was "the inability to compete on an equal footing" for a city contract.  508 at 666–67 (distinguishing injury allegations involving unequal exclusion from competing for benefits from denial of grant of benefit); see also Wooden, 247 F.3d at 1276 (holding that the proper focus is whether the injury was caused by direct *exposure* to unequal treatment, without regard to whether the plaintiff ultimately may obtain the sought-after benefit).  The Court explained:

> [W]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier to establish standing.

Ne. Fla., 508 U.S. at 666.  The Court also stated that "the 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."  Id.

In addition to showing denial of equal treatment, an individual claiming the injury must show that the injury is "concrete and particularized" as well as "actual or imminent" in order to establish standing.  See Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC, 103 F.4th 765, 772 (11th Cir. 2024) ("[I]f the plaintiff can show that she is "able and ready" to do so, she has demonstrated a concrete injury."); Loffman v. Cal. Dep't of Educ., 119 F.4th 1147, 1159 (9th Cir. 2024) (concluding that identification of a "discriminatory barrier" is not sufficient to establish standing; the claimant must also have suffered a concrete and particularized injury that

is actual or imminent).  In order to demonstrate such an injury in a discriminatory barrier case, the claimant must be able to show that he is "able and ready" to pursue the opportunity. See Ne. Fla., 508 U.S. at 666 (holding that the plaintiffs had standing to challenge an ordinance giving preferential treatment to minority-owned businesses because they demonstrated that they were able and ready to bid on contracts); Am. All. for Equal Rts., 103 F.4th at 772 (citing Carney v. Adams, 592 U.S. 53, 60 (2020)).  Thus, Cobb cannot establish standing merely by identifying a discriminatory barrier, he must also show that he is "able and ready" to pursue the credits.

Cobb has not demonstrated that he has standing under an equal protection theory.  Cobb has not shown a concrete or particularized injury, nor is that injury actual or imminent.  Cobb has not shown that he was "able and ready" to receive the benefit he seeks—FTCs—when he filed this Petition.  As explained above, at the time Cobb filed his Petition, he had not satisfied the minimum criteria to be eligible for FTCs and, even if he had, he was not eligible to have those FTCs applied to his sentence.  Because Cobb had not satisfied the minimum requirements for earing and applying FTCs, he has alleged a concrete and particularized injury and the injury was not actual or imminent at that time.  Consequently, Cobb has failed to allege an injury in fact as to his "unequal treatment" claim, and therefore he has not shown that he has standing under that theory.

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Cobb leave to appeal *in forma pauperis*.  Though Cobb has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

15

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Cobb *in forma pauperis* status on appeal.

### CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, doc. 7, **DISMISS without prejudice** Cobb's Petition, doc. 1, and **DENY as moot** Cobb's presumed renewed Motion for Injunctive Relief, doc. 11.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Cobb *in forma pauperis* status on appeal.  I **GRANT** Cobb's Motion to Supplement, doc. 40.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of February, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA